UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

NEWBERG CRESTVIEW, LLC, *an Oregon limited liability company*,

Plaintiff,

v.

CITY OF NEWBERG, *a municipal entity*,

Defendant.

Case No. 3:22-cv-1289-AR

**OPINION AND ORDER**

_____

**ARMISTEAD, Magistrate Judge**

In this lawsuit, Newberg Crestview, LLC alleges that, when the City of Newberg conditioned approval of Crestview's land development plan on Crestview's construction of public improvements but refused to compensate Crestview for those improvements, the City took Crestview's property without just compensation, in violation of the Fifth Amendment to the United States Constitution (as applied to the states under the Fourteenth Amendment) (**Claim 1**) and Article I, section 18, of the Oregon Constitution (**Claim 2**). Crestview also asserts a statutory tort (**Claim 3**) and negligence *per se* (**Claim 4**) on the basis that the City failed to comply with

Page 1 – OPINION AND ORDER

ORS § 197.307(4) (2021)[1] when it failed to "adopt and apply only clear and objective standards, conditions, and procedures regulating" the payment of "System Development Charge credits." (Second Am. Compl. (Compl.) ¶¶ 35-59, ECF No. 34.) In the City's Motion to Dismiss Crestview's Second Amended Complaint, it seeks to dismiss all four claims against it.[2] For the reasons explained in this Opinion and Order, the court grants the City's motion as to Claims Two, Three, and Four and denies its motion as to Claim One.[3]

## BACKGROUND

The court construes as true the factual allegations of Crestview's operative complaint, supplemented by records the court has judicially noticed.[4] *See Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 617 (9th Cir. 2022); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

Crestview owns property in Newberg, Oregon, which it is developing for residential and commercial use as "Crestview Crossing." (Compl. ¶ 9.) Before Crestview could begin developing the property, it needed approval from the City's Planning Commission. (Newberg

---

[1]    In 2023, ORS § 197.307 was renumbered to ORS § 197A.200 and ORS § 197A.400. The court, like the parties, will refer to the statute as it appears in the 2021 Edition of the Oregon Revised Statutes.

[2]    The parties request oral argument. The court, however, does not believe that oral argument would help resolve the pending motion. See LR 7-1(d)(1).

[3]    The parties have consented to jurisdiction by magistrate judge as permitted by 28 U.S.C. § 636(c)(1). (Full Consent, ECF No. 23.)

[4]    The court grants the City's request that the court take judicial notice of the Six-Party Agreement (ECF No. 36-2). The court notices that document for the fact of its existence, but not for the truth of its contents. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1000 (9th Cir. 2018).

Municipal Code 15.100.370(A).) The City's Planning Commission approved Crestview's development project in an order dated October 12, 2018. (2018 Order at 1-2, ECF No. 36-1.)

The City conditioned its approval on Crestview making various public infrastructure improvements near Crestview Crossing. The "Required Improvements" included: (1) building East Crestview Drive as a major collector; (2) building a roundabout; (3) constructing excess capacity on Jory Street to make it a minor collector; (4) dedicating a right of way for Highway 99 and making improvements along Highway 99; (5) a stormwater system with excess capacity; (6) a sanitary sewer system with excess capacity; and (7) a non-potable water system. (Compl. ¶¶ 11-12.) Crestview alleges that the Required Improvements exceed what was necessary to mitigate the effects of its development.

The 2018 Order explains that Crestview may seek compensation, in the form of System Development Charge (SDC) credits, for the cost of making public improvements. (2018 Order at 95.) The 2018 Order also noted that the City could not determine at that time whether the Required Improvements would be eligible for SDC credits. Instead, it instructed Crestview to follow "Procedure 7B" to allow the City to make that determination.

Besides the 2018 Order, there are three agreements related to the development of Crestview Crossing that are relevant to the City's Motion to Dismiss:

*The Six-Party Agreement.* In 2006, six parties entered into an agreement to "begin the process of amending the City's [Transportation System Plan] to implement the Springbrook Northern Arterial Plan." (Six-Party Agreement, ECF No. 36-2 at 2.) That plan called for the City to amend its Transportation System Plan to designate Crestview Drive as a major collector. (*Id.* at 2.) The six parties to the agreement were: the City of Newberg, Yamhill County, Oxberg Lake

Homeowners Association, Ken and Joan Austin, JT Smith Companies,[5] and MeadowWood Development, LLC. (*Id.* at 1.)

*The Security and Improvement Agreement.* In 2021, Crestview and the City entered into a Security and Improvement Agreement. (S&I Agreement, ECF No. 14 at 24-35.) That Agreement provided Crestview with options regarding its completion of the Required Improvements, allowing Crestview to receive building permits for construction of houses in Crestview Crossing before it had completed all of the Required Improvements. (*Id.* at 24.) The Agreement included a waiver of Crestview's rights under "*Dolan v. City of Tigard* and its progeny." (*Id.* at 31.) Also in the Agreement was an acknowledgement by Crestview that the Required Improvements were roughly proportional to the effects of Crestview's development.

*The Performance Agreement.* In 2022, Crestview and the City entered into a Performance Agreement. (Performance Agreement, ECF No. 14 at 36-40.) The Performance Agreement acknowledged that Crestview would construct its development "according to the plans and specifications approved by the City" in the 2018 Order, including applicable conditions of approval. (*Id.* at 37.)

## LEGAL STANDARDS[6]

A court will grant a Rule 12(b)(6) motion to dismiss for failure to state a claim when a claim is unsupported by a cognizable legal theory or when the complaint is without sufficient

---

[5]     The City contends that JT Smith Companies is the owner of Newberg Crestview, LLC.

[6]     For the reasons explained later in this opinion (*see* Sections B and C, *infra*), the court need not analyze any part of the City's motion under Federal Rule of Civil Procedure 12(b)(1). Accordingly, the court sets out only the standards for resolving a motion to dismiss under Rule 12(b)(6).

factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). Assessing the sufficiency of a complaint's factual allegations requires the court to (1) accept that the well-pleaded material facts alleged in the complaint are true; (2) construe factual allegations in the light most favorable to the plaintiff; and (3) draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Newcal Indus. v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). A plaintiff's legal conclusions couched as factual allegations, however, need not be credited as true by the court. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Plausibility is the plaintiff's keystone to surviving a motion to dismiss. That is, a complaint's factual allegations must "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Plausibility is not probability, but plausibility "asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

## DISCUSSION

### A.    The City's Rule 12(b)(1) Motions

The City asserts, under Rule 12(b)(1), that the court lacks subject matter jurisdiction for Crestview's federal takings claim—Claim 1—because it is unripe under the finality requirement for regulatory takings announced by the United States Supreme Court in *Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985).[7] As the court will explain, Crestview is not bringing a regulatory takings claim, which obviates questions about the court's subject matter jurisdiction. Also asserted by the City under Rule 12(b)(1) is that Crestview's state and federal takings claims are destroyed by way of several agreements in which it waived an exaction claim under *Dolan v. City of Tigard*, 512 U.S. 374 (1994), and its related cases, and acknowledged the conditions imposed under the 2018 Order. The court construes the City's waiver assertion as a Rule 12(b)(6) basis for dismissal and, in any event, the court concludes that Crestview did not waive its constitutional right to bring takings claims against the City.

***Ripeness.*** The City's Rule 12(b)(1) argument that Crestview's claim is unripe is based on the City's understanding that Crestview brings a regulatory takings claim that is subject to the finality requirement announced in *Williamson County*. (Def.'s Mot. at 19, ECF No. 35.) The City points to Crestview's Complaint that alleges that the 2018 Order interfered with Crestview's "distinct, investment-backed expectations" (Def.'s Mot. at 10 (citing Compl. ¶ 22)), a reference to one of the factors for assessing regulatory takings claims under *Penn Central Transp. Co. v.*

---

[7]    *Overruled on other grounds by Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162 (2019).

*City of New York*, 438 U.S. 104 (1978). As the court explained in its Opinion and Order on the

City's first Motion to Dismiss, "[a] regulatory taking results from a government regulation that

goes too far in restricting what a property owner may do with her property. Regulatory takings

occur when government places limitations on land that fall short of eliminating all economically

beneficial use, but that diminish the value of property to an unconstitutional degree." *Newberg*

*Crestview, LLC v. City of Newberg*, 2023 WL 8372167, at *3 n.6 (D. Or. Dec. 4, 2023)

(simplified); (ECF No. 32). Although Crestview's First Amended Complaint (FAC) referenced

"distinct, investment-backed expectations," the court did not read the FAC to allege a regulatory

takings claim. Instead, it understood Crestview to bring a land-use exaction claim under *Nollan v.*

*California Coastal Comm'n*, 483 U.S. 825 (1987), and *Dolan v. City of Tigard*, 512 U.S. 374

(1994). *Newberg*, 2023 WL 8372167, at *3-4 & n.6.

      In its Second Amended Complaint, Crestview keeps the reference to "distinct,

investment-backed expectations" but provides no new allegations supporting a regulatory takings

claim. (*See* Compl. ¶¶ 11-24.) Accordingly, the Second Amended Complaint (like the First)

alleges only a land-use exaction claim—not a regulatory takings claim. (*See also* Pl.'s Resp. at

10-11, ECF No. 38 (acknowledging that Crestview brings a land-use exaction claim, and not a

regulatory takings claim).)

      For the reasons explained in the court's earlier opinion, 2023 WL 8372167, at *4-5, the

City's arguments based on *Williamson County*'s finality requirement remain inapplicable to

Crestview's land-use exaction claim.

      ***Waiver.*** The City's second basis for dismissing the federal takings claim under Rule

12(b)(1) is that Crestview agreed to the conditions imposed by the 2018 Order and has waived

any claim that the required improvements were not proportional to the proposed development. (Def.'s Mot. at 8.) But Rule 12(b)(1) motions are limited to motions for lack of subject matter jurisdiction, and waiver is a nonjurisdictional affirmative defense. *See, e.g.*, *Molina Jerez v. Holder*, Case No. 10-4498 (JRT/LIB), 2012 WL 1072581, at *4 (D. Minn. Mar. 30, 2012) ("Waiver . . . is an affirmative defense, FED. R. CIV. P. 8(c)(1), and substantive affirmative defenses are not appropriately considered in the context of a Rule 12(b)(1) motion to dismiss."). Indeed, affirmative defenses are ordinarily inappropriate in a motion to dismiss. *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984). But they can be raised in a nonjurisdictional Rule 12(b)(6) motion *if* they raise no disputed issues of fact. *Id.*; *Molina Jerez*, 2012 WL 1072581, at *4 ("The proper method of seeking dismissal of claims based on an affirmative defense like waiver is a Rule 12(b)(6) motion to dismiss for failure to state a claim, or a Rule 56 motion for summary judgment.").

Accordingly, the court construes the City's motion to dismiss based on waiver as a Rule 12(b)(6) motion. In resolving a Rule 12(b)(6) motion, the court accepts the factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007); *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1159 (9th Cir. 2012).

With that said, the City contends that Crestview has waived its right to bring a land-use exaction claim because, by entering into the Security and Improvement Agreement, Crestview (1) waived its "rights under *Dolan v. City of Tigard* and its progeny" and (2) "acknowledge[d] that the requirements and obligations of the Parties, including but not limited to the Required Improvements, are roughly proportional to the burden and demands on urban facilities and

services that will result from development of the Properties." (S&I Agreement § 8.6.2, ECF No. 14 at 24-34.) The City also points out that Crestview entered into the Performance Agreement in 2022 that expressly acknowledged the conditions imposed through the 2018 Order, and further contends that Crestview is bound by the Six-Party Agreement in which all parties agreed to the City's designation of Crestview Drive as a major collector. (Def.'s Mot. at 13-15.) The City relies on two Ninth Circuit decisions, *Leroy Land Dev. v. Tahoe Reg'l Plan. Planning Agency*, 939 F.2d 696, 698 (9th Cir. 1991), and *McClung v. City of Sumner*, 548 F.3d 1219, 1230 (9th Cir. 2008), to assert that the waiver and acknowledgement in the agreements render *Nollan*/*Dolan* inapplicable. But those cases are not instructive here.

In *Leroy*, the Ninth Circuit addressed whether a land developer, who had "years ago settled a dispute with the appropriate governmental authority over issuance of a building permit" could later "challenge [the] central condition of the settlement on the ground that unilateral imposition of such a condition by the authority would violate the principles enunciated in *Nollan*." 939 F.2d at 697. The court held that the obligation incurred under the settlement agreement could not constitute a governmental taking—*Nollan* does not apply when "parties choose to terminate or avoid litigation by executing a settlement agreement supported by consideration." *Id.* at 697-99. *Leroy* offers little guidance here, where neither the challenged conditions nor the alleged waiver were part of an agreement between the parties to settle a legal dispute. *See id.* (noting that allowing developer to later challenge terms of litigation settlement "would inject needless uncertainty and an utter lack of finality to settlement agreements of this kind").

Page 9 – OPINION AND ORDER

Later, in *McClung*, the Ninth Circuit held that a local government did not effect a taking where it requested that land developers install a 24-inch pipe (larger than the 12-inch pipe required by regulation), in exchange for the waiver of certain fees. 548 F.3d at 1229-30. The court disagreed with the developers' contention that installing the 24-inch pipe was a mandatory requirement for receiving a development permit, observing that the local government had provided "the choice of either agreeing to install a 12-inch pipe and pay the usual fees, or install a 24-inch pipe and receive the fee waiver." *Id.* at 1230. Because the court had already determined that the requirement to install a 12-inch pipe was *not* a taking, *id.* at 1228-30, the developers had the option to develop their property without constructing any disproportionate improvements.

The facts here are different. Crestview alleges that the Required Improvements were imposed through the 2018 Order and exceeded what was required to mitigate the proposed development's effects. The City says the Security and Improvement Agreement "did nothing more than provide [Crestview] with options on completing its development pursuant to the obligations [Crestview] was already bound by in the 2018 Order." (Def.'s Reply at 13, ECF No. 41.) But providing those options to Crestview does not make *Nollan*/*Dolan* inapplicable. That is because none of those options relieved Crestview of the obligation to build or pay for the improvements that, accepting the Complaint's allegations as true, were disproportional to the development's effects. For the same reason, that Crestview "acknowledged and agreed to" the imposed conditions in multiple agreements (Def.'s Mot. at 23) does not render *Nollan*/*Dolan* inapplicable.

As to the waiver provision in Section 8.6.2 of the Security and Improvement Agreement, Crestview contends that the provision is "itself an unconstitutional condition" and is therefore

unenforceable. (Pl.'s Resp. at 13.) Crestview notes that it entered into the Security and Improvement Agreement to receive a discretionary benefit from the City (building permits) and that the City required it to waive its rights under *Dolan* in exchange for that benefit. The City does not dispute that the Security and Improvement Agreement granted Crestview a discretionary benefit or that the waiver provision, Section 8.6.2, was imposed as a condition on Crestview's receipt of that benefit. (*See* Def.'s Reply at 12-15.) Instead, the City replies that the Agreement was entered into for Crestview's benefit. (*Id.* at 12.) The City also argues that the waiver did not require Crestview to give up a constitutional right in exchange for a discretionary benefit because the Agreement was entered into three years after the 2018 Order, which had imposed on Crestview the obligation to build the Required Improvements. (*Id.* at 13.)

"Under the well-settled doctrine of 'unconstitutional conditions,' the government may not require a person to give up a constitutional right—here the right to receive just compensation when property is taken for a public use—in exchange for a discretionary benefit conferred by the government where the benefit sought has little or no relationship to the property." *Dolan*, 512 U.S. at 385. The doctrine protects citizens against the risk that, given free rein to grant conditional benefits, "government will abuse its power by attaching strings strategically, striking lopsided deals and gradually eroding constitutional protections." *United States v. Scott*, 450 F.3d 863, 866 (9th Cir. 2006). Courts must apply the unconstitutional conditions doctrine to "prevent[] governmental end-runs" around constitutional protections. *Id.* In other contexts, the Ninth Circuit has applied the unconstitutional conditions doctrine to hold that government cannot induce an arrestee to waive his Fourth Amendment rights by consenting to future searches as a condition of pretrial release, *id.* at 865-66 & n.5, or condition falconry licenses on applicants' agreement to be

subject to unannounced, warrantless inspections. *Stavrianoudakis v. U.S. Fish & Wildlife Serv.*, 108 F.4th 1128, 1136 (9th Cir. 2024). That government can legally deny a benefit "does not in any way imply the right to [grant that benefit] subject to unconstitutional conditions." *Scott*, 450 F.3d at 866 n.5.

Where, as here, government has conditioned a discretionary benefit on the waiver of a constitutional right, the court will not enforce the waiver. *See id.* at 865-67 (declining to enforce waiver of Fourth Amendment rights). Accordingly, the City's motion to dismiss Crestview's federal takings claim on the basis of waiver is denied.

**B.      The City's Rule 12(b)(6) Motions—Takings Claims**

Turning to the City's remaining Rule 12(b)(6) grounds for dismissal, the City advances two arguments as to Claim 1: (1) the federal takings claim is untimely and (2) Crestview fails to provide sufficient factual allegations to support its claim. (Def.'s Mot. at 22, 24-25.) Crestview responds that untimeliness is not evident from the pleadings, particularly because Crestview is entitled to equitable tolling, and that its Second Amended Complaint sufficiently explains the factual basis for Crestview's contention that the required improvements were not proportional to the effects of the proposed development. (Pl.'s Resp. at 11, 17, 23.) The court agrees with Crestview.

As to Claim 2, the City asserts that, under *West Linn Corp. Park, L.L.C. v. City of West Linn*, 349 Or. 58 (2010), there is not a cognizable Oregon takings claim. Crestview counters that the Oregon Supreme Court was mistaken in *West Linn*. Here, the court sides with the City.

***Sufficiency of Federal Takings Claim.*** The City argues that Crestview's factual allegations are insufficient to state a land-use exaction claim. To survive a motion to dismiss,

Crestview must allege that the City conditioned approval of its development on Crestview constructing improvements that were not based on "an individualized determination that the required [improvements were] related both in nature and extent to the impact of the proposed development." *Dolan*, 512 U.S. at 391. In the City's view, Crestview "fails to connect sufficient factual allegations that give rise to [its] conclusory legal conclusions." (Def.'s Mot. at 25.) The City elaborates in its Reply that Crestview makes no allegation that the City failed to make the required determination that the required improvements related both in nature and extent to the effects of the proposed development. (Def.'s Reply at 22.)

But for each Required Improvement that Crestview alleges constitutes a taking, the Second Amended Complaint alleges (1) the improvement required by the City; (2) the lesser improvement that would have mitigated the effects of the proposed development; and (3) that the City required Crestview to make the larger improvement for a reason other than to mitigate the development's anticipated effects (*e.g.*, "to accommodate future developments," "to serve regional traffic," "to improve overall traffic circulation in the area"). (Compl. ¶ 12.) Those allegations are sufficient to plausibly suggest that Crestview is entitled to relief on its land-use exaction claim.

**Timeliness of Federal Takings Claim.** Alternatively, the City contends that Crestview's federal takings claim must be dismissed as untimely. (Def.'s Mot. at 15-20.) Crestview brings its federal takings claim against the City through 42 U.S.C. § 1983. That statute does not contain a statute of limitations, so "federal courts apply the forum state's statute of limitations for personal injury actions, along with the forum state's law regarding tolling, including equitable tolling, except to the extent any of these laws is inconsistent with federal law." *Butler v. Nat'l Cmty.*

*Renaissance of Cal.*, 766 F.3d 1191, 1198 (9th Cir. 2014) (quotation marks omitted). In Oregon, the two-year statute of limitations for personal injury actions, ORS § 12.110(1), applies to claims brought under Section 1983. *Sain v. City of Bend*, 309 F.3d 1134, 1139 (9th Cir. 2002). Both parties agree that Oregon's two-year statute of limitations for personal injury actions applies to Crestview's federal takings claim. (Def.'s Mot. at 24; Pl.'s Resp. at 17.)

What is not agreed on by the parties is when Crestview's takings claim accrued. Crestview contends that its claim did not accrue until the City failed to compensate Crestview for the improvements, as contemplated by the 2018 Order, under the City's established procedure for providing compensation in the form of SDC credits. (Pl.'s Resp. at 18-19.) Alternatively, even if Crestview's claim accrued when the 2018 Order was issued, Crestview asserts that it is entitled to equitable tolling based on the City's representations that it would compensate Crestview with SDC credits for any qualified public improvements. (2018 Order at 95 (indicating that Crestview should follow "Procedure 7B" for a determination of whether improvements were eligible for SDC credits); Newberg Municipal Code 13.05.130 ("A credit shall be given for the cost of a qualified public improvement.").)

"Although state law determines the length of the limitations period, federal law determines when a civil rights claim accrues." *Bonelli v. Grand Canyon Univ.*, 28 F.4th 948, 952 (9th Cir. 2022) (quotation marks omitted). Under federal law, a civil rights claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Id.* "[A] plaintiff asserting a takings claim may bring a federal suit starting at the time of the taking." *Foshee v. Lane County*, Case No. 6:24-cv-00447-MC, 2024 WL 3970663, at *2 (D. Or. Aug. 26, 2024) (citing *Knick v. Twp. of Scott*, 588 U.S. 180, 194 (2019)).

Page 14 – OPINION AND ORDER

As a category of unconstitutional conditions claims, a land-use exaction claim typically arises when government either "*approves* a permit on the condition that the applicant turn over property or *denies* a permit because the applicant refuses to do so." *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 606 (2013). That is, the claim generally accrues when the unconstitutional condition is imposed. *Stavrianoudakis*, 108 F.4th at 1137 ("A plaintiff suffers a 'constitutionally cognizable injury' whenever the government succeeds in pressuring the plaintiff into forfeiting a constitutional right in exchange for a benefit or the government withholds a benefit based on the plaintiff's refusal to surrender a constitutional right.").

Here, the City imposed the allegedly unconstitutional conditions in 2018. But, as the parties agree, the 2018 Order and other documents contemplated that Crestview could receive compensation for qualified improvements by following Procedure 7B. That is, it is unclear from the pleadings when Crestview "knew or had reason to know" that it would not receive compensation for the allegedly disproportionate improvements. *Bonelli*, 28 F.4th at 952.

And even if Crestview's claim accrued in 2018, it is possible that its claim was subject to equitable tolling based on the City's requirement that Crestview complete Procedure 7B before any SDC determinations could be made. In Oregon, the doctrine of equitable tolling is available when "when circumstances outside the control of the affected party make it impossible to comply with a statute of limitations." *Allen v. Nw. Permanente, P.C.*, Case No. 3:12-cv-0402-ST, 2013 WL 865967, at *6 (D. Or. Jan. 2, 2013)); *see also Monical v. Marion County*, Case No. 6:18-cv-103-YY, 2021 WL 228891, at * (D. Or. Jan 22, 2021) (concluding that Oregon Supreme Court would likely apply equitable tolling "under the general equitable tolling test," which

"requires that a litigant establish (1) that he or she has been pursuing his or her rights diligently, and (2) that some extraordinary circumstance stood in his or her way").

A complaint cannot be dismissed as time barred "unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Von Saher v. Norton Simon Museum of Art*, 592 F.3d 954, 969 (9th Cir. 2010). That means that "[a] motion to dismiss based on the running of the statute of limitations period may be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995) (quotation marks omitted). And because the applicability of equitable tolling "often depends on matters outside the pleadings, it 'is not generally amenable to resolution on a Rule 12(b)(6) motion.'" *Id.* (quoting *Cervantes v. City of San Diego*, 5 F.3d 1273, 1276 (9th Cir. 1993)).

Based on the Complaint and the documents the court has judicially noticed, it is not clear when Crestview learned that it would not be compensated for certain improvements, or if it could have possibly learned that (through completion of the required procedure) within two years after the 2018 Order.[8] Because the court cannot conclude that Crestview can prove no set of facts that would establish the timeliness of its claim, the City's motion to dismiss the federal takings claim must be denied.

---

[8]     The court is not convinced by the City's contention that the claim accrued and was not subject to tolling after the 2018 Order because that Order put Crestview on notice that it wasn't "guaranteed" compensation for the Required Improvements. (Def.'s Reply at 12.)

Page 16 – OPINION AND ORDER

***Oregon Takings Claim.*** As to Crestview's takings claim under Article I, section 18, of the Oregon Constitution, the City contends that Crestview does not assert a cognizable claim, relying on the Oregon Supreme Court's holding in *West Linn*, 349 Or. at 94, that, "Absent additional allegations, a property owner that alleges that a local government has conditioned development on construction of off-site improvements at a cost that is not roughly proportional to the impacts of the development, does not allege a taking under Article I, section 18, of the Oregon Constitution."[9] (Def.'s Mot. at 26-27.) But Crestview contends that the court in *West Linn* based its analysis for its state constitutional holding by relying on the *Nollan/Dolan* conclusion that a monetary obligation is not personal property. (Pl.'s Resp. at 22-25.) Because the United States Supreme Court in *Koontz*, 570 U.S. at 611-15, later held that monetary exactions tied to real property development are property subject to a *Nollan/Dolan* analysis, Crestview argues that *West Linn* is no longer good law. (Pl.'s Resp. at 24.) The court, on consideration of the Oregon Supreme Court's state constitutional analysis in *West Linn*, disagrees.

In *West Linn*, the Oregon Supreme Court addressed takings claims under both the state and federal constitutions. Both claims were based on the developer's contention that the city of West Linn had, as a condition of approving the developer's project, required that the developer construct improvements that were not proportional to the effects of the proposed development.

---

[9]    The parties do not dispute that the Oregon Supreme Court's holding as to the federal takings claim—that "a government's requirement that a property owner undertake a monetary obligation that is not roughly proportional to the impacts of its development does not constitute an unconstitutional condition under *Nollan*/*Dolan* or a taking under the Fifth Amendment," 349 Or. at 86—is no longer good law.

The court concluded that the developer did not allege valid takings claims under either the state or federal constitution. 349 Or. at 77-78, 88.

Contrary to its usual practice, the court first analyzed the federal constitutional claim, rather than the state constitutional claim. *Id.* at 77. As the court explained, it did so because the plaintiff "use[d] United States Supreme Court cases—*Nollan* and *Dolan*—as the theoretical basis for [both the state and federal] claims," so "[a]n initial discussion of Fifth Amendment jurisprudence therefore provide[d] a helpful backdrop for [the court's] analysis." *Id.* After relying on United States Supreme Court case law to determine that the plaintiff's allegations did not constitute a federal claim under the Fifth Amendment or *Nollan*/*Dolan*, *id.* at 77-88, the court identified and applied its long-standing methodology for interpreting original provisions of the state constitution, articulated in *Priest v. Pierce*, 314 Or. 411, 415-16 (1992). That methodology considers the provision's "text[,] its history, and the cases interpreting it." *Id.* at 88 (quoting *Coast Range Conifers v. Bd. of Forestry*, 339 Or. 136, 142 (2005)). It is true that the court referenced federal case law that it found "helpful[]" in explaining its reasoning for the state constitutional claim, but the court did so only after applying the *Priest* methodology to conclude: "In our view, there is not any logical way to apply a takings analysis to the imposition of new monetary obligations." *Id.* at 93. Contrary to Crestview's contention, the court's analysis of the state takings claim under Article I, section 18, of the Oregon Constitution was not rooted, or dependent, on its understanding of federal takings law.

This court is bound by the Oregon Supreme Court's interpretation of its own constitution. *Paulson v. City of San Diego*, 294 F.3d 1124, 1128 (9th Cir. 2002) ("When interpreting state law,

[federal courts] are bound to follow the decisions of the state's highest court."). Accordingly, Crestview's Oregon takings claim is dismissed with prejudice.[10]

## C.   Oregon Tort Claims

Crestview, relying on ORS § 197.307(4) (2021), brings two tort claims against the City: a statutory tort claim (Claim 3) and a negligence *per se* claim (Claim 4). The City contends that ORS § 197.307(4) (2021) does not provide a private right of action, is not intended to protect developers, and does not seek to avoid the type of harm that Crestview alleges. (Def.'s Mot. at 28.) Crestview counters that the statute is aimed at preventing "unreasonable cost or delay," harms necessarily borne by housing developers, and that recognizing a private right of action is the best way to carry out the legislature's intent. (Pl.'s Resp. at 36-40). Reviewing the statute in context, the court concludes that ORS § 197.307(4) (2021) does not create statutory liability and is not intended to protect developers. Crestview's tort claims are therefore dismissed with prejudice, and the court need not address the City's additional argument that those claims are untimely.

***Private Right of Action.*** "Statutory liability arises when a statute either expressly or impliedly creates a private right of action for the violation of a statutory duty. Whether a statute does so is a question of statutory interpretation." *Doyle v. City of Medford*, 356 Or. 336, 344 (2014) (footnote and citation omitted). Because ORS § 197.307 (2021) does not expressly create

---

[10]      After briefing on the present motion had closed, Crestview requested leave to file supplemental briefing regarding the effect of a new United States Supreme Court case, *Sheetz v. County of El Dorado*, 601 U.S. 267 (2024), on the continuing validity of *West Linn*. (ECF No. 42.) The court granted the parties leave to address *Sheetz*'s effect (if any) on Crestview's Oregon takings claim. After reviewing *Sheetz* and the parties' briefs, the court concludes that *Sheetz* (like *Koontz*) has nothing to say about Article I, section 18, of the Oregon Constitution.

a private right of action, at issue here is whether the statute impliedly does so. To resolve that question, the court must apply the methodology for statutory interpretation announced in *State v. Gaines*, 346 Or. 160, 171-73 (2009)—examination of text and context, and if useful, legislative history—to determine whether the legislature intended to create a private right of action for violation of the statutory duty. *Doyle*, 356 Or. at 345.[11] If statutory interpretation leads the court to conclude that the legislature intended either to create or deny a private right of action, the court must adhere to the legislature's intent.[12] *Id.* at 344-52, 355-56.

The Oregon Supreme Court, in determining whether the legislature impliedly intended to create a private right of action for violation of a statutory duty, has focused on two factors: "(1) whether the statute refers to civil liability in some way, and (2) whether the statute provides no express remedy, civil or otherwise, for its violation and, therefore, there would be no remedy of any sort unless the court determined that the legislature impliedly created one or the court itself provided one." *Doyle*, 356 Or. at 345-46 (citations omitted).

The text of ORS § 197.307(4) (2021) makes no reference to civil liability, and is not particularly helpful to resolving the present issue. The statute provides that

> [L]ocal government may adopt and apply only clear and objective standards, conditions and procedures regulating the development of housing, including needed housing, on land within an urban growth boundary. The standards, conditions and procedures:

---

[11]    The parties have not provided any legislative history, and "the court is not obligated to independently research legislative history." *Gaines*, 346 Or. at 166.

[12]    If, in contrast, statutory interpretation reveals that the legislature had *no intent* regarding creation of a private right of action, then a court may, in limited circumstances, "judicially create a common-law right of action to redress the violation." *Doyle*, 356 Or. at 346. Here, because the court concludes that the legislature did have an intent as to a private right of action (to deny it), that legislative intent forecloses the possibility of a judicially created right of action.

. . . .

(b) May not have the effect, either in themselves or cumulatively, of discouraging needed housing through unreasonable cost or delay.

ORS § 197.307(4) (2021).

As to whether remedies exist to address noncompliance with ORS § 197.307 (2021), it is important to understand that the statute is part of Oregon's comprehensive statutory scheme for regulating land use planning. *See* ORS Chs. 197 & 197A. Oregon's land use laws "promote the coordinated use of lands through a system of comprehensive land use goals and plans adopted throughout the state with a clear process for compliance review." *Johnson v. Landwatch Lane Cnty.*, 327 Or. App. 485, 492 (2023) (citing ORS § 197.005(2)). And the statutes surrounding ORS § 197.307 (2021), as part of Oregon's land use planning framework, provide mechanisms for enforcement of land use laws, demonstrating that the Oregon legislature did not intend to create a private right of action.

Sections 197.319 to 197.350 of the Oregon Revised Statutes "set[] out how Oregon's Land Conservation and Development Commission [(LCDC)] enforces Oregon's land use planning requirements, including ORS 197.307." *Valhalla Custom Homes, LLC v. City of Portland*, Case No. 3:21-cv-00225-JR, 2021 WL 8156024, at *7 (D. Or. Sept. 17, 2021), *findings and recommendation adopted*, 2022 WL 796012 (D. Or. Mar. 16, 2022). Those statutes allow parties to "request adoption of an enforcement order under ORS 197.320." ORS § 197.319(1) (2021). And ORS § 197.320(10) (2021) provides that the LCDC will order a local government to bring its actions into compliance with land use regulations or housing production strategy if the commission has good cause to believe that "[a] local government's approval standards, special

Page 21 – OPINION AND ORDER

conditions on approval of specific development proposals[,] or procedures for approval do not comply with ORS 197.307(4)."

In addition, the legislature gave Oregon's Land Use Board of Appeals "exclusive jurisdiction" over appeals from specific land use decisions, including for failure to provide "clear and objective approval standards, conditions and procedures for needed housing." ORS §§ 197.825; 197.831 (2021). "LUBA was created as part of the comprehensive land use system and . . . was statutorily designed as a specialized tribunal with the ability and capacity to render efficient and conclusive reviews of local and statewide land use decisions." *Johnson*, 327 Or. App. at 492-93.

In sum, the provision that Crestview contends provides a private right of action is part of a comprehensive regulatory regime that expressly provides remedies for violation of the provision's requirements through specialized tribunals. Reading ORS § 197.307(4) (2021) in context makes clear that the legislature did not intend that provision to create a private right of action outside the statutory remedies provided. Crestview's statutory liability claim (Claim 3) is therefore dismissed with prejudice.

***Negligence Per Se.*** Unlike its statutory liability claim, Crestview's negligence *per se* claim (Claim 4) does not depend on whether the statute creates an express or implied right of action. *Shahtout v. Emco Garbage Co.*, 298 Or. 598, 601 (1985) ("Even when a statute neither expressly nor impliedly gives a person injured by its violation any claim for damages, that person may have such a claim under existing common law theories, based on negligence or on something else, to which the statutory violation may be relevant."). "[N]egligence *per se* . . . is simply shorthand for a negligence claim in which the standard of care is expressed by a statute or

rule." *Abraham v. T. Henry Const., Inc.*, 350 Or. 29, 35 n.5 (2011); *accord Doyle*, 356 Or. at 345 n.7. A negligence *per se* claim is appropriate "[w]hen a negligence claim otherwise exists, and a statute or rule defines the standard of care expected of a reasonably prudent person under the circumstances, [such that] a violation of that statute or rule establishes a presumption of negligence." *Deckard v. Bunch*, 358 Or. 754, 761 n.6 (2016).

Violation of a statute does not necessarily establish liability under a theory of negligence *per se*. Instead, a plaintiff can bring a claim for negligence *per se* only where: a common-law negligence claim otherwise exists; the violation of the statute caused the plaintiff's injuries; the plaintiff is within the class of persons intended to be protected by the legislation; and the injury is within the area of risk intended to be avoided by the statute. *Moody v. Oregon Comm. Credit Union*, 371 Or. 772, 781-82 (2023); *Smith v. Portland Traction Co.*, 226 Or. 221, 225 (1961).

In the City's view, ORS § 197.307 (2021) does not provide the standard for Crestview's claim because that provision is intended to protect low-income families, not developers, and because loan carrying costs are not within the area of risk that the legislature intended to avoid. (Def.'s Mot. at 30-32; Def.'s Reply at 29-30.) The City points to ORS § 197.307(1)-(3) (2021), where the legislature expressly described the problem it sought to address:

> (1) The availability of affordable, decent, safe and sanitary housing opportunities for persons of lower, middle and fixed income, including housing for farmworkers, is a matter of statewide concern.
>
> (2) Many persons of lower, middle and fixed income depend on government assisted housing as a source of affordable, decent, safe and sanitary housing,
>
> (3) When a need has been shown for housing within an urban growth boundary at particular price ranges and rent levels, needed housing shall be permitted in one or more zoning districts or in

zones described by some comprehensive plans as overlay zones
with sufficient buildable land to satisfy that need.

The court agrees with the City that the legislature intended ORS § 197.307 (2021), as one of Oregon's "needed housing statutes," to ensure adequate housing for Oregon residents. *See Warren v. Washington County*, 296 Or. App. 595, 597 (2019) ("The statutes that are set out at ORS 197.295 to 197.314 are commonly referred to as the Needed Housing Statutes. [ORS 197.307] addresses, as 'a matter of statewide concern,' the 'availability of affordable, decent, safe and sanitary housing opportunities . . .'" (simplified)). Although ORS § 197.307(4)(b) (2021) promotes that goal by preventing overly burdensome regulation of housing development, which in turn benefits developers, nothing suggests that the legislature's intent was to protect developers. Instead, as the legislature expressed in the preceding subsections, its intent was to ensure the availability of adequate housing for "persons of lower, middle and fixed income." ORS § 197.307(1) (2021). Because Crestview falls outside the class of persons ORS § 197.307 (2021) was intended to protect, Crestview's negligence *per se* claim under that statute is dismissed with prejudice.

\ \ \ \ \

\ \ \ \ \

\ \ \ \ \

\ \ \ \ \

\ \ \ \ \

\ \ \ \ \

Page 24 – OPINION AND ORDER

**CONCLUSION**

For the above reasons, the City's Second Motion to Dismiss (ECF No. 35) is GRANTED

IN PART and DENIED IN PART. Claims 2, 3, and 4 in Crestview's Second Amended Complaint

are dismissed with prejudice.

DATED: October 25, 2024

_____
JEFF ARMISTEAD
United States Magistrate Judge